1          IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF MARYLAND

3                  NORTHERN DIVISION

4

5   UNITED STATES OF AMERICA,      ) CRIMINAL
                                   ) NO. DKC-19-0204
6            Plaintiff,            )
                                   )
7   v.                             )
                                   )
8   DONTE LAMONT DINGLE,           )
                                   )
9            Defendant.            )

10             TRANSCRIPT OF SENTENCING PROCEEDINGS
         BEFORE THE HONORABLE DEBORAH K. CHASANOW
11               UNITED STATES DISTRICT JUDGE
             WEDNESDAY, JUNE 23, 2021; 10:00 A.M.
12                   GREENBELT, MARYLAND

13  FOR THE PLAINTIFF:

14          OFFICE OF THE UNITED STATES ATTORNEY
            BY:  LaRAI EVERETT, ESQUIRE
15          36 S. Charles Street
            Fourth Floor
16          Baltimore, Maryland  21201
            (410) 209-4857
17
    FOR THE DEFENDANT:
18
            DAVIS AND DAVIS
19          BY:  CHRISTOPHER M. DAVIS, ESQUIRE
            1350 Connecticut Avenue NW
20          Suite 202
            Washington, DC  20036
21          (202) 234-7300

22

23
    OFFICIAL COURT REPORTER:
24  Renee A. Ewing, RPR, RMR, CRR - (301) 344-3227

25    ***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES***

1          THE DEPUTY CLERK:  May I have your attention, please.

2     The United States District Court for the District of Maryland

3     is now in session.  The Honorable Deborah K. Chasanow

4     presiding.

5          THE COURT:  Good morning.

6          (Counsel reply, "Good morning, Your Honor.")

7          THE COURT:  Ms. Everett, would you call the case for

8     us, please?

9          MS. EVERETT:  Yes, Your Honor.  Good morning.

10    Calling *United States vs. Donte Dingle,* Criminal Case No.

11    DKC-19-204.

12         LaRai Everett on behalf of the United States.  And we are

13    here for sentencing today, Your Honor.  And to my left is TFO

14    Peter Hanlon.

15         MR. DAVIS:  Good morning, Your Honor.  Christopher

16    Davis on behalf of Mr. Dingle, who is present to my right.

17         THE COURT:  Okay.  Great.  Okay.  Good to see

18    everybody.  Of course, we are also joined by our probation

19    officer, Mr. Lowe.

20         All right.  Let's see.  Just double checking the docket.

21    I don't think -- we were in court together last October just

22    before a new law went into effect called the Due Process

23    Protections Act, so I was just double-checking.  This new law

24    requires the Court to remind the government of its obligation

25    under *Brady vs. Maryland* to disclose to the defense information

1    that might be favorable and material either to guilt or to

2    punishment and to remind them that violations of that

3    obligation can result in serious consequences of a variety of

4    types.

5           And we were supposed to have this discussion the first

6    time we are all in court together, but, obviously, the original

7    proceedings in this case preceded the adoption of this statute,

8    so we are, out of an abundance of caution, doing it the first

9    time we are in court after the effective date of the statute,

10   which was last October.

11          So, Ms. Everett, will you confirm for me on behalf of the

12   government that you are and always have been aware of your

13   obligations under *Brady vs. Maryland* and the related case?

14               MS. EVERETT:  Yes, Your Honor.  I have and I am.

15               THE COURT:  And do you believe you have complied with

16   that obligation in this case?

17               MS. EVERETT:  Yes, Your Honor.

18               THE COURT:  Mr. Davis, do you have any comments on

19   that?

20               MR. DAVIS:  I don't, Your Honor.

21               THE COURT:  Okay.  Then I will just enter the order

22   that we are required to do.

23          Okay.  For sentencing, I have the latest presentence

24   report in front of me called the second revision filed June

25   10th, 2021.  I have two submissions, one by the government and

1  one by the defense, regarding sentencing.  The defense

2  memorandum is Paper 96 filed June 7th, and the government's

3  letter is June 8th, Paper 98.  The government, I think,

4  requested to seal.

5       I have also some victim impact statements.  We got it

6  with a memo of June 8th in hard copy.  I don't know that those

7  have been filed electronically.

8       The government had much earlier filed a motion for

9  preliminary order of forfeiture, and I don't think I received

10  an opposition, but will get clarification on that.

11       Is that everything that I should have in writing

12  concerning sentencing?

13            MS. EVERETT:  I believe so, Your Honor.

14            THE COURT:  If you will pull that microphone down and

15  then you can remain seated.

16            MS. EVERETT:  Thank you.  I am afraid I am going to

17  hit my head on it.

18            THE COURT:  Okay.  Mr. Davis, do you confirm

19  everything I should have in writing?

20            MR. DAVIS:  That's correct, Your Honor.

21            THE COURT:  Okay.  Now, have you reviewed the second

22  revision, the June 10th presentence report with Mr. Dingle?

23            MR. DAVIS:  I have, Your Honor.

24            THE COURT:  And what issues do you -- I think, first

25  of all, I will confirm, in paragraph 7, Mr. Lowe, there is a

1    sentence in the middle there that you understand the government

2    is no longer proposing or supporting during the robbery of

3    Ridgeway, the actions resulted in the store owner, and so that

4    sentence should be deleted.

5             PROBATION OFFICER LOWE:  Yes, Your Honor.

6             THE COURT:  You already made the changes in the

7    guidelines, but not in that one.

8             PROBATION OFFICER LOWE:  Okay.

9             THE COURT:  Is there anything else, Mr. Davis, that

10   you object to in the presentence report?

11            MR. DAVIS:  Nothing materially, Your Honor.

12            THE COURT:  Okay.  Then we can eliminate that

13   sentence.

14        Now, the guidelines were different at the time the

15   sentencing memos were filed, that when the probation officer

16   appropriately backed out the four-level potential increase for

17   the one robbery because there is no evidence of physical

18   injury, the felon in possession count that was grouped with it

19   became important and resulted in a base offense level of 24 for

20   that group in any event.

21        So if there are no exceptions or objections, I have

22   reviewed it, and I believe, although it's obviously more

23   complicated than maybe it needed to be, that the guidelines are

24   properly calculated.

25            I questioned for a moment whether the felon in possession

1   charge, which was on a different date, should even group, but I

2   am satisfied, in looking at the provisions in the guidelines,

3   that it probably should even though it's not as crystal clear.

4   But even if it didn't group, it would still result in the same

5   because the maximum -- the -- the numbers of units are from

6   three-and-a-half to five if we add the four levels, so it

7   wouldn't affect the ultimate guideline for all of these other

8   than the brandishing counts.

9        So I am prepared to adopt the proposal of an advisory

10  offense level of 28 and a criminal history category of IV on,

11  as I say, all but the brandishing firearm counts.  And we will

12  proceed from there.

13       Is anyone going to speak today other than counsel and

14  Mr. Dingle?

15            MS. EVERETT:  No, Your Honor.

16            MR. DAVIS:  No one on behalf of the defense, Your

17  Honor.

18            THE COURT:  Okay.  Perhaps I need to clarify, the

19  government, on behalf of any of the victims appropriately

20  considered in this case, is not seeking restitution?

21            MS. EVERETT:  That's correct, Your Honor.

22            THE COURT:  All right.  I will start with Ms. Everett

23  and then we will turn to Mr. Davis and Mr. Dingle.

24            MS. EVERETT:  Thank you, Your Honor.

25       And Your Honor, it's okay if I remain seated?

1          THE COURT:  Yes.  It takes getting used to for those

2    who are used to standing in a courtroom, but masks and

3    Plexiglas mean we have to stay close to microphones.

4          MS. EVERETT:  No.  I appreciate that, Your Honor.

5          THE COURT:  Ms. Everett.

6          MS. EVERETT:  Your Honor, as the Court has indicated,

7    you had the opportunity, I am sure, to review government's

8    sentencing letter in this case, and there was a victim impact

9    statement with the victim, Sarah Linsmater, that I am sure the

10   Court had an opportunity to review as well, and I will touch

11   slightly on that in a little bit.  But in consideration of the

12   sentencing factors under 18, United States Code, 3553(a),

13   obviously, the Court is to consider the history and

14   characteristics of the defendant, the nature and circumstances

15   of the offense, and determine, based on those things, what

16   sentence reflects the seriousness of the offense in this

17   particular case.

18         In looking at those factors, although the defendant does

19   not have a -- a lengthy criminal history, he has a significant

20   criminal history.  And when I say "significant," it's because

21   his two prior convictions in this case are for the same offense

22   that we are here for today.  Those involved robbery with a

23   deadly weapon and an armed robbery.

24         And what I think is also significant about those two

25   offenses, although his first occurred at the age of 24 and the

1   defendant is now 47, close to turning 48, that offense, he

2   received ten years of incarceration.  And one would think, at

3   the age of 24, that maybe a ten-year incarceration period, even

4   though it was state level, I am sure he didn't serve the entire

5   time of that because state sentences often are at a reduced

6   level, it still would have been a significant sentence, and he

7   was released, according to the PSR, on May 1st, 2004.

8         His second offense was an armed robbery that I mentioned

9   earlier from August 31st, 2004.  So just four months or three

10   months shy of being released from a significant incarceration

11   period, he was arrested again for the same type of offense, an

12   armed robbery, and I think that's very significant.

13        And at the time of this instant offense, he was also

14   still on probation for that offense.  So the defendant in this

15   case has not been deterred on any level, not from his first

16   conviction at the age of 24, not from his second conviction at

17   the age of 31 where he also served a significant sentence, and

18   certainly not now where he committed four separate robberies

19   with a firearm.

20        Your Honor, you had the opportunity, of course, to hear

21   all of the evidence in this case.  The nature and circumstances

22   are serious in this case as this Court has certainly had the

23   opportunity to hear.  The victims testified about not only the

24   events that happened for each of the robberies in the summer of

25   2018, but they testified about how they felt and their fear and

1   how they were scared and how they observed the defendant on

2   some of those occasions with his finger on the trigger of the

3   gun, pointing the gun at him -- at them as they were ordered to

4   have the registers emptied and ordered to the back of their

5   building.

6          Certainly their fear and their memory of the event was

7   serious.  And the victim in this case that did provide a victim

8   impact statement, she noted that she didn't have any physical

9   wounds, and if she had, they'd heal over time, but she noted

10  that the mental scars of what happened do not.  She went on to

11  explain that she knows that working in this type of business,

12  something like this might happen, but she never thought this

13  would actually happen to her.  And she says it really doesn't

14  cross your mind because no one thinks it will happen to them

15  until a couple of years ago when that was me, when it finally

16  happened, it broke something in me.

17         The victim in this case, Ms. Linsmater, certainly has

18  struggled in life, and she noted that she now has to cope with

19  what happened, and it's something that's broke her.  And I

20  think that's significant.  There is no physical injuries.  The

21  defendant in this case certainly had the opportunity to inflict

22  physical harm.  Thank goodness, he did not.  But the mental

23  injuries for these victims will last likely a lifetime.

24         So for the nature and circumstances in this case, Your

25  Honor, they are significant.  The defendant, as you know, we

1    provide -- we had witnesses testify about the disguises that

2    the defendant wore.  Certainly, I am sure he was attempting to

3    hide his identity because he had the two prior convictions for

4    the same similar offense -- offenses.  He had worn something to

5    hide his tattoo, which would also reveal his identity

6    potentially.

7         But thank goodness for the investigative work in this

8    case and the DNA and fingerprint analysis that did identify the

9    defendant in this case and the search warrant that was executed

10   at his house where the gun was recovered that matched the

11   description of the firearm used in this case.

12        This was a very serious offense for where this defendant

13   terrorized the communities of Baltimore and Anne Arundel County

14   for a several-month period, and the victims in this case

15   testified about their fear and how it impacted them.

16        So in consideration of the 3553(a) factors and

17   determining what sentence is appropriate, I have noted in the

18   PSR, when I initially looked at it, that I did not have the

19   evidence to support the fractured neck that was mentioned

20   during the testimony.  The victim in that case has since sold

21   her business, which was the liquor store in this case, and,

22   unfortunately, TFO Hanlon was not able to locate her.  So, for

23   those reasons, I didn't include the plus four.

24        And when I submitted my sentencing letter to the Court, I

25   failed to consider the 922 which would have had the base

1  offense level, as the Court has just mentioned, of 24.  With a

2  grouping of the other offenses, the base offense level

3  ultimately would have been 28.  So I was four off is my point.

4       When I initially thought about what would be the

5  appropriate sentence for the defendant, I thought the bottom of

6  the guidelines, and if I was looking at the base offense level

7  of 24, the bottom of the guidelines would have been 77.  That

8  guideline range for that offense level is 77 to 96 months.

9       When I looked at it earlier after recalculating if we

10 were to consider the base offense level of 28, instead, as the

11 Court has already adopted the PSR guidelines, those guidelines

12 would have been 110 to 137 months, the bottom being just three

13 years more than what I initially calculated.

14      The defendant in this case was found guilty on all ten

15 counts, and, as the PSR indicated, Three, Five, Seven, and Nine

16 of those carry mandatory minimums of seven years with a total

17 of 336 months.

18      I believe, given the fact the defendant has not been

19 deterred on any level throughout his life with these similar

20 offenses and continuing to pick up these type of offenses and

21 terrorizing the citizens surrounding Baltimore City, Anne

22 Arundel County, and Baltimore County, I think certainly 336

23 months is a significant sentence.

24      However, I think that the additional time for the

25 guidelines that I noted, the bottom of the guidelines should be

1  added as well, and I ask that they be added consecutive to 336

2  months.

3      Whether the Court wants to consider my initial

4  recommendation of 413 months or what the actual guidelines

5  suggests at the 110 months, which would be 446 months, I

6  certainly will defer to the Court, but I think that is an

7  appropriate sentence in this case.  I think that -- I don't

8  know, actually, if the defendant will ever be deterred from

9  these type of crimes.  His history certainly doesn't reflect

10  that he is deterred.  The fact that he has multiple robberies

11  that he's been convicted of in October this last year certainly

12  suggests he is not deterred on any level.

13      But I think he needs a significant sentence in this case,

14  one where the federal system, as this Court is well aware, he

15  will have no parole.  He will actually serve the balance of

16  that sentence, whatever the Court decides today.  And I think

17  that the sentence I am recommending is a sentence that is

18  sufficient, but not greater than necessary, and will satisfy

19  the goals under 3553(a).

20      Thank you, Your Honor.

21      MR. DAVIS:  Good morning, Your Honor.

22      I apologize for the memo missing that 922(g).  If Your

23  Honor takes a look at that and the presentence report, this

24  report went through about five or six revisions.  It was fairly

25  complex as we were going through these calculations.  We

1   started out as an ACCA, we started out as a career offender,

2   and then there were questions about whether a 924(c) would be a

3   predicate for career offender, and all of these things were

4   worked through.  So, in a sense, we accomplished a lot, but we

5   ended up in exactly the same place that we started pretty much.

6        We agree with the calculations in the presentence report.

7   There is no question the robberies, the armed robberies count

8   as predicates for prior violent felonies under 2K2.1.

9        I think, from a practical standpoint, Mr. Dingle is going

10  to be 48 years old in July, on July 8th.  His -- he has a

11  couple of prior convictions, but one of them dates back 24

12  years and the other one is about 17 years old.  I may be off a

13  year on that, but it goes back a ways.

14       There is no question that the offense that he's been

15  convicted of -- and he did go to trial, as he insisted he

16  wanted to do from day one, so I am not going to address the

17  facts of the case -- but looking at it from an objective

18  standpoint, it certainly is a dangerous situation.  But there

19  were no acts of cruelty or physical violence.  That wasn't the

20  nature of these offenses.  They had the potential for being

21  dangerous, a very strong potential; however, there were no acts

22  of cruelty.  And I think that's important.

23       I will start right where I am going to end.  I really

24  believe that the mandatory minimum, which is 28 years, is more

25  than satisfactory to comply with the goals of 3553(a).  I would

1  also ask that Your Honor give him credit for the state time he

2  did awaiting being transferred over to the federal system.  He

3  was in Baltimore County from July 20th of 2018 until June 3rd

4  of 2019.

5      I am going to ask Your Honor to impose a variance to the

6  mandatory minimum here, and for these reasons, number one,

7  Mr. Dingle is going to be over 70 years old when released on

8  this sentence.  That's more than enough to satisfy all the

9  criteria identified in 3553(a).  Just punishment, deterrence,

10  protection of the public, I mean, it hits every factor within

11  there.  And in the event that, for some strange reason, the

12  924(c)s become found invalid later on down the road for some

13  reason, there is still the sentencing package doctrine which

14  would allow Your Honor to adjust the sentence to compensate for

15  that.  So I think that to sentence him to anything other than

16  the mandatory is -- is just not necessary.

17      He is in -- he isn't an ACCA.  He's not a armed career

18  offender.  He's not a career offender.  There was no physical

19  harm here.

20      He has family ties.  He has an imagination.  I don't

21  think there is any doubt about that.  I -- I just -- it just

22  seems to be silly to place a man like this in prison for the

23  rest of his natural life as opposed to allowing him to seeing

24  the light at the end of the tunnel.  Again, I think that the

25  age alone is going to be a biological deterrent that will

1    protect the public.

2        And even -- even with the -- a sentence to the statutory

3    mandatory minimum, that still rivals the sentence imposed on

4    the most violent criminals that come through this courthouse.

5    It's practically a life sentence, 28 years mandatory.  It's

6    well above the average sentence that's imposed.  I believe I

7    attached a sheet from the Sentencing Guidelines Commission.

8    The average sentence for an individual convicted of an armed

9    robbery with a 924(c), I believe the average sentence there is

10   163 months.  We are well above that with the mandatory minimum.

11       And -- and I can't help but overlook the fact that a lot

12   of cases go through state court, maybe even through the federal

13   court, where individuals are charged with one or two contact

14   robberies, and there was just -- I mean, it's almost -- it's

15   not arbitrary.  I mean, the United States has to have the

16   evidence to proceed, but there are decisions that are made.  I

17   mean, and with the stroke of a pen, his mandatory could go down

18   seven years, it could have gone down 14 years, but it didn't.

19       I just think, taking everything into consideration,

20   perhaps most important, I would say the age factor, I would ask

21   Your Honor to impose the statutory mandatory minimum in this

22   case and vary down on the guidelines.

23            THE COURT:  Any problem with the forfeiture request?

24            MR. DAVIS:  No question forfeiture request for the

25   weapon, Your Honor.

1          THE COURT:  Mr. Dingle, this is now your opportunity

2    yourself to tell me anything that you want me to know.

3          THE DEFENDANT:  Should I pull down the mask?

4          THE COURT:  You can, yes.  That will probably make it

5    a little bit better.

6          THE DEFENDANT:  First of all, Your Honor, I think we

7    have been here before.  You know how I feel about everything.

8    I respectfully object to this whole entire proceeding.  I have

9    been railroaded.  We have been through this.  You know I

10   disagree with a lot of things that happened, the motion hearing

11   down to the trial itself.  I have not been treated fairly.

12         Even asking for 28, I will be your age, and we all know

13   in this courtroom I am not going to live past the age of 60.

14   We know that.  This world is not even going to be standing by

15   the time I am 76 years old.

16         So, you know, I don't see -- I don't see the difference.

17   The government is asking for six, ten more than what my

18   attorney is asking for.  I will be 48 years old in a week and a

19   half.  I am not going to survive to 60.  So to impose that type

20   of sentence on me, regardless if it's 28, 38, whatever, it's

21   not going to make a difference.  I am not going to serve it.  I

22   am not going to be alive.  And everybody I knew is going to be

23   not alive as well, including my mother, which you know that I

24   have a special relationship with.  You know this.

25         And I -- I don't see why you won't consider the

1   corruption on the part of the Baltimore County Police

2   Department.  I am not talking about Task Force Hanlon.  He's

3   probably the only one that wasn't corrupt.  But Blevens and

4   Ali, you know what they did, and I don't know why you would

5   just ignore that.

6        I heard good things about you, Your Honor, from the

7   beginning.  I met you in February of 2020 and you act like you

8   was going to give me a fair shot at this, and I don't know what

9   changed from that time to September 2020 for you to do what you

10  did, but it's not right.  I have no problem accepting

11  responsibility for what I have done, but I didn't do it.  And

12  they lied to get -- do what they did to me, and you know just

13  like everybody else know.  It's in black and white.  They need

14  to be held accountable.

15       That is the problem with America now.  The police

16  department need to be held accountable for when they do wrong,

17  and they did wrong to put me in this situation.  And I don't

18  like it.  I object to it.  I object to everything about it.

19  It's not right.  It's wrong.  We know what this case is about.

20  This is a farce, and I respectfully dissent.

21            MR. DAVIS:  I have nothing to add, Your Honor.

22       (It is the policy of this court that every guilty plea

23  and sentencing proceeding include a bench conference concerning

24  whether the defendant is or is not cooperating.)

25            THE COURT:  All right.  Mr. Dingle is before the

1  Court for sentencing on ten counts of the indictment.  Count

2  One is the Hobbs Act robbery conspiracy; Counts Two, Four, Six,

3  and Eight are substantive Hobbs Act robberies; Counts Three,

4  Five, Seven, and Nine are using, carrying, and brandishing a

5  firearm during and in relation to a crime of violence; and

6  Count Ten, felon in possession of a firearm.

7       The four liquor store robberies that were the subject of

8  the trial occurred in June and July of 2018.  The felon in

9  possession offense resulted from the search and the discovery

10  of the firearm on July 20th, 2018.

11       It's difficult for me to know where to start in terms of

12  describing the seriousness of the criminal conduct for which

13  Mr. Dingle has been found guilty.  The victims in this case did

14  a wonderful job in describing to all of us, both at the trial

15  and in their letters, the impact, the fear, the -- the

16  life-changing experience of being on the receiving end of a gun

17  when someone points it at them and demands money.  It's true

18  that there is no evidence of physical harm, but there is clear

19  evidence of emotional and mental stress harm to the

20  individuals.

21       This isn't just about the money that the liquor stores

22  and the victims lost.  This is about trauma, about fright,

23  about real danger because a gun -- who knows how close it came

24  to being discharged or if the police had arrived soon enough

25  creating a crossfire situation.  I mean, you have a loaded gun

1  in your hand, your finger on the trigger, who knows what can

2  happen.

3       So, yes, there was no physical cruelty, I guess as

4  Mr. Davis described it, but there certainly was physical

5  danger, and there is no question it was emotional harm.

6       There also was some money taken, although not enough to

7  change the guidelines.

8       And there were four of them and they were spaced two

9  weeks apart, a week apart, and I don't know that these are all

10  of them.  In fact, I am pretty sure they weren't.  And there is

11  no question that they would not have stopped had there not been

12  some very good law enforcement work, a little bit of luck, a

13  little bit of bad luck on Mr. Dingle's part, or sloppiness,

14  shall we say, to have been able to put this together and get to

15  him on the 20th of July in 2018.  Why he undertook this at this

16  particular time, who knows.  Obviously, a financial desire,

17  although there was some work, some employment.

18       Looking back at the criminal history, the -- the -- the

19  criminal history that remains, I suppose, the first robbery at

20  age 24, robbery with a deadly weapon, again, with other folks,

21  this one a Gap store, handguns, resulted in a ten-year

22  sentence, released in May of 2004, followed by an armed robbery

23  of a Domino's Pizza in August.

24       The presentence report reflects the sentence imposed in

25  2013.  That made me scratch my head a bit, saying if the arrest

1  and the offense happened back in 2004, why are we getting

2  sentencing in 2013?  I don't know all of the details, but it

3  looks to me like there were two trials and then maybe something

4  else post conviction or something, a review that resulted in

5  the final imposition in November of 2013 of 20 years with all

6  but the time already served, nine years, two months, and 14

7  days, everything else was suspended.  So it looks to me like it

8  didn't take eight years to get it into court, not eight but

9  almost, but that there were proceedings going on throughout

10 that entire time.

11      Released on November 15th, 2013, and the spree that we

12 are talking about happened in the summer of 2018.  They are not

13 that long after release, although long enough to convince me, I

14 think, Mr. Dingle, that you knew better, but it does put a

15 little bit to the lie the notion of age.  That last one, you

16 were 31, according to the presentence report.  This one, you

17 were in your mid 40s, so it didn't slow you down.  If anything,

18 the armed robberies accelerated, and, as I say, four of them

19 were shown here in court, and I am not sure that was all

20 that -- in fact, I am sure that was not all that there were.

21      So that doesn't necessarily persuade me, as Mr. Davis has

22 argued, that simply getting older is going to slow you down

23 from your propensity to put a gun in people's faces and take

24 what doesn't belong to you.

25      The law is very complicated in this sentencing realm.

1    We, as Mr. Davis indicated, went through several iterations of

2    the presentence report.  The law, I don't want to say it's

3    evolving.  I don't know if it's a crazy patchwork of -- of

4    things.  We have statutes that have mandatory minimums.  We

5    have a statute that requires a certain treatment for felon in

6    possession if people have certain criminal histories.  We have

7    sentencing guidelines that use similar but not exactly

8    congruent definitions of a crime of violence.  And we have

9    different guidelines that potentially apply to either crime of

10   violence or someone who is a career offender.

11        The time you went to trial, I think Mr. Dingle thought he

12   might be facing an armed career criminal with a 15-year

13   mandatory, a career offender with guidelines just off the top

14   of the charts, plus, of course, we have always known, if there

15   were convictions on the 924(c) counts, consecutive seven-year

16   sentences for each of the four instances.

17        So, Mr. Davis, I think, you know, with the expungement of

18   certain of those prior convictions, I mean, some of that

19   changed, the law sometimes changed in terms of appellate

20   decisions, and we are where we are now, which is, I think, at

21   the very lowest range of the combination of mandatories and

22   guidelines that could ever have been contemplated, and it's

23   still, obviously, a daunting time frame that Mr. Dingle is

24   looking at.

25        The four counts of 924(c) do carry mandatory seven years

1  and they must be consecutive to each other and to any other

2  sentence, so we are starting at 28 years for the brandishing.

3  And why is that, Mr. Dingle?  It's because Congress has

4  concluded that if you walk in and put a gun in somebody's face

5  and ask them for money, you have got to do at least seven years

6  each time, but it is so dangerous that we hope we deter people,

7  but if we don't, we recognize they are so dangerous, they must

8  be removed from society for a minimum amount of time.  That's a

9  minimum.  It's not a maximum.  It's a minimum seven years each

10  time.

11       So what I have to do in this case is decide whether the

12  other offenses, the other six counts, the conspiracy and the

13  substantive Hobbs Act robberies and the felon in possession,

14  justify imposition of more than that.  The guidelines are

15  calculated as they are and they are only guidelines.  I do not

16  have to follow them.  I do have to calculate them, but I don't

17  have to use them.

18       And in this instance, it is permissible for the Court to

19  consider the mandatory minimums that have to be applied on the

20  other four counts in deciding how much, if any, additional time

21  to impose for the other counts.  This is unlike the aggravated

22  identity theft statute that prohibits a Court from considering

23  that sentence and deciding what the underlying offense should

24  get.

25       The government commendably, I think, recognizes that the

1  guidelines calculated by the 28 and the IV are probably higher

2  than is necessary under the circumstances.  They still want me

3  to impose an additional 77 months on the other counts.

4  Mr. Dingle, understandably, hopes that there won't be any

5  additional time.  And I have to put it all together and figure

6  out what I think is an appropriate overall sentence.

7       Other than the age, the defense suggests that family

8  ties, his obvious imagination, and sentences imposed on others

9  all merit a variance down to the mandatory.

10      I do recognize, Mr. Dingle, that family, in particular,

11 your mother, are very important, and that is a plus for you.

12 Always happy to see that people I unfortunately have to

13 sentence do have support and continuing love from family.

14      Your imagination, I saw writ large here in terms of the

15 -- not only the facts of the offense but some of the other

16 materials you have submitted over the months.  It's a shame

17 because you have got talent.  You have obviously got some

18 smarts, but you didn't use it in the proper way, and, instead,

19 you used arrogance and moxie to terrorize liquor store owners

20 and operators in the summer of 2018.

21      The statistics on sentences imposed on others are of

22 limited help.  I doubt, Mr. Davis, that any of those included

23 sprees of this many, this close together, with a promise to

24 continue if not caught.  Yes, there are prosecutorial decisions

25 made by every prosecutor in the country.  That's part of the

1  way our system works.  As I have already alluded to, I think
2  the government could have brought more, and they stopped at
3  four in this case.
4       I don't -- I, frankly, I don't see anything wrong.  Each
5  of them was a separate victim.  The guidelines recognize that.
6  We don't group these robberies.  We treat them each as a
7  separate offense with a separate victim because that's what it
8  was.
9       As you can see, Mr. Dingle, I am still contemplating and
10  still struggling with putting this all together.  I, frankly,
11  think it would not be inappropriate to sentence you long enough
12  to say you will safely be behind bars for the rest of your
13  life.  You are, from my perspective, only 48.  As you alluded
14  to, you will be close to my age when you are released, if not
15  more.
16       I am going to sentence you to an overall sentence of 30
17  years in prison.  It's going to be 24 months on the conspiracy
18  and the substantive Hobbs Act and the felon in possession,
19  concurrent, with consecutive seven-year sentences on each of
20  Counts Three, Five, Seven, and Nine, which is the brandishing a
21  firearm during and in relation to a crime of violence.  I --
22  obviously, if anything were to happen to those 924(c) counts,
23  we'd be back together for a decision on what to do, but under
24  those circumstances, I do think 30 years overall is a,
25  obviously, significant sentence and hopefully one that will

1   protect the public, which is a very important consideration.

2       I don't know whether deterrence is a factor here given

3   Mr. Dingle's track record and, obviously, his constitutionally

4   permitted perspective on what's happened here.  He says he

5   doesn't mind accepting responsibility for what he did, but he

6   didn't do this.  I'm sorry.  I respectfully disagree,

7   Mr. Dingle.  I have no question that the jury got it right in

8   this -- in this case.  I don't think this is disparate, and

9   most of it is mandatory, but I don't think it's disparate given

10  the spree that we saw.

11      You say he's not an armed career criminal or career

12  offender.  We can quibble with legal definitions of crimes of

13  violence.  There is no question this was a crime of violence.

14  This wasn't simply a threat to property.  It was a threat to

15  people.  But we are not allowed to go behind the generic

16  elements of an offense for a lot of purposes, so let's not -- I

17  mean, he may not be legally an ACCA or a career offender, but

18  practically, yes, he is.  This is his third conviction for

19  armed robbery, it's his third, fourth, fifth, sixth conviction

20  for armed robbery, and no indication that he would have

21  stopped.

22      I am trying to make sure I have touched on all of the

23  issues that were generated by the parties here.

24      In any event, it's concurrent sentences of 24 months on

25  One, Two, Four, Six, Eight, and Ten, consecutive seven on each

1    of the Three, Five, Seven, and Nine, for a total of 360 months.

2          We will follow the incarceration with supervised release.

3    That will be three years on Counts One, Two, Four, Six, Eight,

4    and Ten, and five years on Three, Five, Seven, and Nine, all to

5    run concurrent.

6          The conditions that will apply are all of those required

7    by law as well as the standard conditions of supervision that

8    we have concluded are necessary for appropriate supervision in

9    any case.

10         In addition, Mr. Dingle will participate in a mental

11   health treatment program as directed.  He will participate in a

12   substance abuse treatment program including testing as

13   directed.  He will provide the probation officer with access to

14   requested financial information.  He will participate in a

15   vocational services program as directed.  There is no

16   restitution that's being sought, although it would be mandatory

17   if it were appropriately shown, but it's not being sought here.

18         I do impose the special assessments, so that's $100 per

19   count for a total of $1,000.  This is money that will go into a

20   fund to help people who are victims of crimes and, for that

21   reason, have financial problems that they didn't otherwise

22   have.

23         In addition, I will enter the forfeiture order forfeiting

24   the firearm and the ammunition that is listed both in the

25   indictment and in the motion for forfeiture.

1        I will prepare and enter this judgment in writing as soon

2   as I have had a chance to do it.

3        Mr. Davis, are there any requests for recommendations to

4   the Bureau of Prisons?

5            MR. DAVIS:  Yes, Your Honor.  We would ask for a

6   recommendation to FCI Cumberland.

7            THE COURT:  And the reason?

8            MR. DAVIS:  To be close to family.  And if Cumberland

9   is not possible, a similarly-situated FCI facility within the

10  Bureau of Prisons.

11           THE COURT:  Okay.  It's -- I can recommend,

12  Mr. Dingle.  That's it.  It's up to BOP to decide what to do.

13       You did ask me to grant credit.  That's really not up to

14  me to grant credit.  The Bureau of Prisons does all that

15  calculation, but it seems to me that the presentence report

16  reflects that he has been detained on related state charges and

17  these charges continually since July 20th, 2018, that none of

18  that time has been credited against any other sentence, and,

19  therefore, he should be entitled to credit all the way back to

20  July 20, 2018.

21           THE DEFENDANT:  Excuse me, Your Honor.  That other

22  conduct where you see in the PSR --

23           THE COURT:  I don't pay any attention to that.

24           THE DEFENDANT:  Well, that's what I was -- that's

25  this right here, the Baltimore County 7/20/2018.

1          THE COURT:  That one was this one.  Yes.  No, I get

2     it.

3          THE DEFENDANT:  And the Baltimore City also goes to

4     the 1997.  I don't know why they indicted it that way.  I have

5     been trying to fix it.

6          THE COURT:  The 1997, it's just the date of arrest,

7     and I don't pay much attention to it.

8          THE DEFENDANT:  Well, they got it placed like it's a

9     separate incident.  It's not.  It's the same --

10          THE COURT:  It's other alleged criminal conduct.

11    That's all it is.  You were arrested, you know, that happened,

12    but it doesn't have any impact on the guidelines or my

13    sentence.

14          Paragraph 66, the Baltimore County one, is the one that

15    was the arrest on -- those are related.  Those are the same

16    charges.  No.  I know that's exactly right.  And that's --

17    that's reflected in the report.  And there will be no question

18    that you have been continuously in custody since that arrest,

19    and that this sentence, you should get credit because they

20    don't calculate that until you get to the BOP, but they will.

21    You just pay attention to it and make sure that they give you

22    that credit.  There is a mechanism if, for any reason, they

23    make a mistake, that you can challenge that and you can get it

24    corrected.  They are pretty good about that.

25          THE DEFENDANT:  We know about paying attention.  You

1  know I am going to pay attention to that.

2        THE COURT:  All right.  There is obviously no charges

3  to dismiss.

4        My final -- I think it's my final thing, Mr. Dingle, is

5  to advise you about your right to appeal.  An appeal would have

6  to be noted in writing within two weeks of the entry on the

7  record of the court of the judgment, which may be today, it may

8  be tomorrow.  Mr. Davis will file that notice of appeal if

9  that's what you want to do, so talk to him promptly so that he

10  knows whether to do that.

11        You have had appointed counsel and you may again have

12  appointed counsel for you on appeal.  If you are unable to

13  afford to hire counsel, the Fourth Circuit will provide counsel

14  for you.

15        All right.  Ms. Derro reminds me that these are all in

16  the superseding indictment, and so any charges in the original

17  indictment need to be dismissed.  Is that okay, Ms. Everett?

18        MS. EVERETT:  Yes, Your Honor, of course.  Thank you

19  for the reminder.

20        THE COURT:  Okay.  All right.  Now, does anybody have

21  any questions?  Is there anything I have left unclear,

22  forgotten to mention, or resolve?

23        MS. EVERETT:  Not from the government, Your Honor.

24        MR. DAVIS:  Nothing from the defense, Your Honor.

25        THE COURT:  Okay.  From probation, do you have

1    everything you need?

2              PROBATION OFFICER LOWE:  Yes, Your Honor.

3              THE COURT:  Okay.  Well, then, as I say, I will

4    prepare the judgment, copies will go out electronically as soon

5    as we have a chance to complete them, and the designation

6    process will begin.

7         Mr. Dingle, it takes a little bit of time for the BOP to

8    make that decision on the designation.  We are, fortunately,

9    coming out of the pandemic a little bit so transportation from

10   where you are now to a BOP facility I hope will happen sooner

11   rather than later, but you need to continue to be a little

12   patient because it will take some weeks before all that

13   happens.

14        All right.  If there is nothing further, that completes

15   this proceeding.

16             MS. EVERETT:  Thank you, Your Honor.

17             THE COURT:  Thank you.

18        (The proceedings were concluded at 11:00 a.m.)

19

20

21

22

23

24

25

1                          C E R T I F I C A T E

2

3          I, Renee A. Ewing, an Official Court Reporter for

4   the United States District Court for the District of Maryland,

5   do hereby certify that the foregoing is a true and correct

6   transcript of the stenographically reported proceedings taken

7   on the date and time previously stated in the above matter;

8   that the testimony of witnesses and statements of the parties

9   were correctly recorded in machine shorthand by me and

10  thereafter transcribed under my supervision with computer-aided

11  transcription to the best of my ability; and that I am neither

12  of counsel nor kin to any party in said action, nor interested

13  in the outcome thereof.

14

15                      Renee A  Ewing

16

17                      Renee A. Ewing, RPR, RMR, CRR
                        Official Court Reporter
18                      July 19, 2021

19

20

21

22

23

24

25

## $

**$1,000** [1] - 26:19
**$100** [1] - 26:18

## 1

**10:00** [1] - 1:11
**10th** [2] - 3:25, 4:22
**110** [2] - 11:12, 12:5
**11:00** [1] - 30:18
**1350** [1] - 1:19
**137** [1] - 11:12
**14** [2] - 15:18, 20:6
**15-year** [1] - 21:12
**15th** [1] - 20:11
**163** [1] - 15:10
**17** [1] - 13:12
**18** [1] - 7:12
**19** [1] - 31:17
**1997** [2] - 28:4, 28:6
**1st** [1] - 8:7

## 2

**20** [2] - 20:5, 27:20
**20036** [1] - 1:20
**2004** [4] - 8:7, 8:9, 19:22, 20:1
**2013** [4] - 19:25, 20:2, 20:5, 20:11
**2018** [9] - 8:25, 14:3, 18:8, 18:10, 19:15, 20:12, 23:20, 27:17, 27:20
**2019** [1] - 14:4
**202** [2] - 1:20, 1:21
**2020** [2] - 17:7, 17:9
**2021** [3] - 1:11, 3:25, 31:17
**209-4857** [1] - 1:16
**20th** [4] - 14:3, 18:10, 19:15, 27:17
**21201** [1] - 1:16
**23** [1] - 1:11
**234-7300** [1] - 1:21
**24** [10] - 5:19, 7:25, 8:3, 8:16, 11:1, 11:7, 13:11, 19:20, 24:17, 25:24
**28** [9] - 6:10, 11:3, 11:10, 13:24, 15:5, 16:12, 16:20, 22:2, 23:1
**2K2.1** [1] - 13:8

## 3

**30** [2] - 24:16, 24:24
**301** [1] - 1:24

## 31

**31** [2] - 8:17, 20:16
**31st** [1] - 8:9
**336** [3] - 11:17, 11:22, 12:1
**344-3227** [1] - 1:24
**3553(a** [2] - 7:12, 10:16
**3553(a)** [3] - 12:19, 13:25, 14:9
**36** [1] - 1:15
**360** [1] - 26:1
**38** [1] - 16:20
**3rd** [1] - 14:3

## 4

**40s** [1] - 20:17
**410** [1] - 1:16
**413** [1] - 12:4
**446** [1] - 12:5
**47** [1] - 8:1
**48** [4] - 8:1, 13:10, 16:18, 24:13

## 6

**60** [2] - 16:13, 16:19
**66** [1] - 28:14

## 7

**7** [1] - 4:25
**7/20/2018** [1] - 27:25
**70** [1] - 14:7
**76** [1] - 16:15
**77** [3] - 11:7, 11:8, 23:3
**7th** [1] - 4:2

## 8

**8th** [3] - 4:3, 4:6, 13:10

## 9

**922** [1] - 10:25
**922(g)** [1] - 12:22
**924(c** [5] - 13:2, 15:9, 21:15, 21:25, 24:22
**924(c)s** [1] - 14:12
**96** [2] - 4:2, 11:8
**98** [1] - 4:3

## A

**a.m** [1] - 30:18
**A.M** [1] - 1:11
**ability** [1] - 31:11
**able** [2] - 10:22, 19:14
**abundance** [1] - 3:8
**abuse** [1] - 26:12
**ACCA** [3] - 13:1, 14:17, 25:17
**accelerated** [1] - 20:18
**accepting** [2] - 17:10, 25:5
**access** [1] - 26:13
**accomplished** [1] - 13:4
**according** [2] - 8:7, 20:16
**accountable** [2] - 17:14, 17:16
**Act** [5] - 2:23, 18:2, 18:3, 22:13, 24:18
**act** [1] - 17:7
**action** [1] - 31:12
**actions** [1] - 5:3
**acts** [2] - 13:19, 13:21
**actual** [1] - 12:4
**add** [2] - 6:6, 17:21
**added** [1] - 12:1
**addition** [2] - 26:10, 26:23
**additional** [4] - 11:24, 22:20, 23:3, 23:5
**address** [1] - 13:16
**adjust** [1] - 14:14
**adopt** [1] - 6:9
**adopted** [1] - 11:11
**adoption** [1] - 3:7
**advise** [1] - 29:5
**advisory** [1] - 6:9
**affect** [1] - 6:7
**afford** [1] - 29:13
**afraid** [1] - 4:16
**age** [12] - 7:25, 8:3, 8:16, 8:17, 14:25, 15:20, 16:12, 16:13, 19:20, 20:15, 23:7, 24:14
**aggravated** [1] - 22:21
**ago** [1] - 9:15
**agree** [1] - 13:6
**aided** [1] - 31:10
**AIDED** [1] - 1:25
**Ali** [1] - 17:4
**alive** [2] - 16:22, 16:23
**alleged** [1] - 28:10
**allow** [1] - 14:14
**allowed** [1] - 25:15
**allowing** [1] - 14:23
**alluded** [2] - 24:1, 24:13
**almost** [2] - 15:14, 20:9
**alone** [1] - 14:25
**America** [1] - 17:15
**AMERICA** [1] - 1:5
**ammunition** [1] - 26:24
**amount** [1] - 22:8
**analysis** [1] - 10:8
**AND** [1] - 1:18
**Anne** [2] - 10:13, 11:21
**apart** [2] - 19:9
**apologize** [1] - 12:22
**appeal** [4] - 29:5, 29:8, 29:12
**appellate** [1] - 21:19
**applied** [1] - 22:19
**apply** [2] - 21:9, 26:6
**appointed** [2] - 29:11, 29:12
**appreciate** [1] - 7:4
**appropriate** [5] - 10:17, 11:5, 12:7, 23:6, 26:8
**appropriately** [3] - 5:16, 6:19, 26:17
**arbitrary** [1] - 15:15
**argued** [1] - 20:22
**armed** [12] - 7:23, 8:8, 8:12, 13:7, 14:17, 15:8, 19:22, 20:18, 21:12, 25:11, 25:19, 25:20
**arrest** [4] - 19:25, 28:6, 28:15, 28:18
**arrested** [2] - 8:11, 28:11
**arrived** [1] - 18:24
**arrogance** [1] - 23:19
**Arundel** [2] - 10:13, 11:22
**assessments** [1] - 26:18
**attached** [1] - 15:7
**attempting** [1] - 10:2
**attention** [6] - 2:1, 27:23, 28:7, 28:21, 28:25, 29:1
**ATTORNEY** [1] - 1:14
**attorney** [1] - 16:18
**August** [2] - 8:9, 19:23
**Avenue** [1] - 1:19
**average** [3] - 15:6, 15:8, 15:9
**awaiting** [1] - 14:2
**aware** [2] - 3:12, 12:14

## B

**backed** [1] - 5:16
**bad** [1] - 19:13
**balance** [1] - 12:15
**Baltimore** [9] - 1:16,
**10:13, 11:21, 11:22, 14:3, 17:1, 27:25, 28:3, 28:14**
**bars** [1] - 24:12
**base** [5] - 5:19, 10:25, 11:2, 11:6, 11:10
**based** [1] - 7:15
**became** [1] - 5:19
**become** [1] - 14:12
**BEFORE** [1] - 1:10
**begin** [1] - 30:6
**beginning** [1] - 17:7
**behalf** [5] - 2:12, 2:16, 3:11, 6:16, 6:19
**behind** [2] - 24:12, 25:15
**belong** [1] - 20:24
**bench** [1] - 17:23
**best** [1] - 31:11
**better** [2] - 16:5, 20:14
**biological** [1] - 14:25
**bit** [8] - 7:11, 16:5, 19:12, 19:13, 19:25, 20:15, 30:7, 30:9
**black** [1] - 17:13
**Blevens** [1] - 17:3
**BOP** [4] - 27:12, 28:20, 30:7, 30:10
**bottom** [4] - 11:5, 11:7, 11:12, 11:25
**Brady** [2] - 2:25, 3:13
**brandishing** [5] - 6:8, 6:11, 18:4, 22:2, 24:20
**broke** [2] - 9:16, 9:19
**brought** [1] - 24:2
**building** [1] - 9:5
**Bureau** [3] - 27:4, 27:10, 27:14
**business** [2] - 9:11, 10:21
**BY** [2] - 1:14, 1:19

## C

**calculate** [2] - 22:16, 28:20
**calculated** [4] - 5:24, 11:13, 22:15, 23:1
**calculation** [1] - 27:15
**calculations** [2] - 12:25, 13:6
**career** [10] - 13:1, 13:3, 14:17, 14:18, 21:10, 21:12, 21:13, 25:11, 25:17
**carry** [2] - 11:16, 21:25
**carrying** [1] - 18:4
**case** [32] - 2:7, 3:7,

3:13, 3:16, 6:20, 7:8,
7:17, 7:21, 8:15,
8:21, 8:22, 9:7, 9:17,
9:21, 9:24, 10:8,
10:9, 10:11, 10:14,
10:20, 10:21, 11:14,
12:7, 12:13, 13:17,
15:22, 17:19, 18:13,
22:11, 24:3, 25:8,
26:9
**Case** [1] - 2:10
**cases** [1] - 15:12
**category** [1] - 6:10
**caught** [1] - 23:24
**caution** [1] - 3:8
**certain** [3] - 21:5,
21:6, 21:18
**certainly** [12] - 8:18,
8:22, 9:6, 9:17, 9:21,
10:2, 11:22, 12:6,
12:9, 12:11, 13:18,
19:4
**certify** [1] - 31:5
**challenge** [1] - 28:23
**chance** [2] - 27:2, 30:5
**change** [1] - 19:7
**changed** [3] - 17:9,
21:19
**changes** [1] - 5:6
**changing** [1] - 18:16
**characteristics** [1] -
7:14
**charge** [1] - 6:1
**charged** [1] - 15:13
**charges** [5] - 27:16,
27:17, 28:16, 29:2,
29:16
**Charles** [1] - 1:17
**charts** [1] - 21:14
**Chasanow** [1] - 2:3
**CHASANOW** [1] - 1:10
**checking** [2] - 2:20,
2:23
**CHRISTOPHER** [1] -
1:19
**Christopher** [1] - 2:15
**Circuit** [1] - 29:13
**circumstances** [5] -
7:14, 8:21, 9:24,
23:2, 24:24
**citizens** [1] - 11:21
**City** [2] - 11:21, 28:3
**clarification** [1] - 4:10
**clarify** [1] - 6:18
**clear** [2] - 6:3, 18:18
**CLERK** [1] - 2:1
**close** [6] - 7:3, 8:1,
18:23, 23:23, 24:14,
27:8
**Code** [1] - 7:12

**combination** [1] -
21:21
**coming** [1] - 30:9
**commendably** [1] -
22:25
**comments** [1] - 3:18
**Commission** [1] -
15:7
**committed** [1] - 8:18
**communities** [1] -
10:13
**compensate** [1] -
14:14
**complete** [1] - 30:5
**completes** [1] - 30:14
**complex** [1] - 12:25
**complicated** [2] -
5:23, 20:25
**complied** [1] - 3:15
**comply** [1] - 13:25
**COMPUTER** [1] - 1:25
**computer** [1] - 31:10
**COMPUTER-AIDED**
[1] - 1:25
**computer-aided** [1] -
31:10
**concerning** [2] - 4:12,
17:23
**concluded** [3] - 22:4,
26:8, 30:18
**concurrent** [3] -
24:19, 25:24, 26:5
**conditions** [2] - 26:6,
26:7
**conduct** [3] - 18:12,
27:22, 28:10
**conference** [1] - 17:23
**confirm** [3] - 3:11,
4:18, 4:25
**Congress** [1] - 22:3
**congruent** [1] - 21:8
**Connecticut** [1] - 1:19
**consecutive** [5] -
12:1, 21:15, 22:1,
24:19, 25:25
**consequences** [1] -
3:3
**consider** [6] - 7:13,
10:25, 11:10, 12:3,
16:25, 22:19
**consideration** [4] -
7:11, 10:16, 15:19,
25:1
**considered** [1] - 6:20
**considering** [1] -
22:22
**conspiracy** [3] - 18:2,
22:12, 24:17
**constitutionally** [1] -
25:3

**contact** [1] - 15:13
**contemplated** [1] -
21:22
**contemplating** [1] -
24:9
**continually** [1] - 27:17
**continue** [2] - 23:24,
30:11
**continuing** [2] - 11:20,
23:13
**continuously** [1] -
28:18
**convicted** [3] - 12:11,
13:15, 15:8
**conviction** [5] - 8:16,
20:4, 25:18, 25:19
**convictions** [5] - 7:21,
10:3, 13:11, 21:15,
21:18
**convince** [1] - 20:13
**cooperating** [1] -
17:24
**cope** [1] - 9:18
**copies** [1] - 30:4
**copy** [1] - 4:6
**correct** [3] - 4:20,
6:21, 31:5
**corrected** [1] - 28:24
**correctly** [1] - 31:9
**corrupt** [1] - 17:3
**corruption** [1] - 17:1
**counsel** [6] - 6:13,
29:11, 29:12, 29:13,
31:12
**Counsel** [1] - 2:6
**Count** [2] - 18:1, 18:6
**count** [3] - 5:18, 13:7,
26:19
**country** [1] - 23:25
**Counts** [4] - 18:2,
18:3, 24:20, 26:3
**counts** [11] - 6:8, 6:11,
11:15, 18:1, 21:15,
21:25, 22:12, 22:20,
22:21, 23:3, 24:22
**County** [7] - 10:13,
11:22, 14:3, 17:1,
27:25, 28:14
**couple** [2] - 9:15,
13:11
**course** [4] - 2:18,
8:20, 21:14, 29:18
**COURT** [34] - 1:1,
1:23, 2:5, 2:7, 2:17,
3:15, 3:18, 3:21,
4:14, 4:18, 4:21,
4:24, 5:6, 5:9, 5:12,
6:18, 6:22, 7:1, 7:5,
15:23, 16:1, 16:4,
17:25, 27:7, 27:11,

27:23, 28:1, 28:6,
28:10, 29:2, 29:20,
29:25, 30:3, 30:17
**Court** [19] - 2:2, 2:24,
7:6, 7:10, 7:13, 8:22,
10:24, 11:1, 11:11,
12:3, 12:6, 12:14,
12:16, 18:1, 22:18,
22:22, 31:3, 31:4,
31:17
**court** [9] - 2:21, 3:6,
3:9, 15:12, 15:13,
17:22, 20:8, 20:19,
29:7
**courthouse** [1] - 15:4
**courtroom** [2] - 7:2,
16:13
**crazy** [1] - 21:3
**creating** [1] - 18:25
**credit** [6] - 14:1,
27:13, 27:14, 27:19,
28:19, 28:22
**credited** [1] - 27:18
**crime** [5] - 18:5, 21:8,
21:9, 24:21, 25:13
**crimes** [2] - 12:9,
25:12, 26:20
**CRIMINAL** [1] - 1:5
**criminal** [10] - 6:10,
7:19, 7:20, 18:12,
19:18, 19:19, 21:6,
21:12, 25:11, 28:10
**Criminal** [1] - 2:10
**criminals** [1] - 15:4
**criteria** [1] - 14:9
**cross** [1] - 9:14
**crossfire** [1] - 18:25
**CRR** [2] - 1:24, 31:16
**cruelty** [3] - 13:19,
13:22, 19:3
**crystal** [1] - 6:3
**Cumberland** [2] -
27:6, 27:8
**custody** [1] - 28:18

**D**

**danger** [2] - 18:23,
19:5
**dangerous** [4] - 13:18,
13:21, 22:6, 22:7
**date** [4] - 3:9, 6:1,
28:6, 31:7
**dates** [1] - 13:11
**daunting** [1] - 21:23
**Davis** [12] - 2:16, 3:18,
4:18, 5:9, 6:23, 19:4,
20:21, 21:1, 21:17,
23:22, 27:3, 29:8
**DAVIS** [15] - 1:18,

1:19, 2:15, 3:20,
4:20, 4:23, 5:11,
6:16, 12:21, 15:24,
17:21, 27:5, 27:8,
29:24
**days** [1] - 20:7
**DC** [1] - 1:20
**deadly** [2] - 7:23,
19:20
**Deborah** [1] - 2:3
**DEBORAH** [1] - 1:10
**decide** [2] - 22:11,
27:12
**decides** [1] - 12:16
**deciding** [2] - 22:20,
22:23
**decision** [2] - 24:23,
30:8
**decisions** [3] - 15:16,
21:20, 23:24
**defendant** [15] - 7:14,
7:18, 8:1, 8:14, 9:1,
9:21, 9:25, 10:2,
10:9, 10:12, 11:5,
11:14, 11:18, 12:8,
17:24
**Defendant** [1] - 1:9
**DEFENDANT** [8] -
1:17, 16:3, 16:6,
27:21, 27:24, 28:3,
28:8, 28:25
**defense** [6] - 2:25,
4:1, 6:16, 23:7,
29:24
**defer** [1] - 12:6
**definitions** [2] - 21:8,
25:12
**deleted** [1] - 5:4
**demands** [1] - 18:17
**Department** [1] - 17:2
**department** [1] - 17:16
**DEPUTY** [1] - 2:1
**Derro** [1] - 29:15
**described** [1] - 19:4
**describing** [2] - 18:12,
18:14
**description** [1] - 10:11
**designation** [2] - 30:5,
30:8
**desire** [1] - 19:16
**details** [1] - 20:2
**detained** [1] - 27:16
**deter** [1] - 22:6
**determine** [1] - 7:15
**determining** [1] -
10:17
**deterred** [5] - 8:15,
11:19, 12:8, 12:10,
12:12
**deterrence** [2] - 14:9,

25:2
**deterrent** [1] - 14:25
**difference** [2] - 16:16, 16:21
**different** [3] - 5:14, 6:1, 21:9
**difficult** [1] - 18:11
**DINGLE** [1] - 1:8
**Dingle** [22] - 2:10, 2:16, 4:22, 6:14, 6:23, 13:9, 14:7, 16:1, 17:25, 18:13, 20:14, 21:11, 21:23, 22:3, 23:4, 23:10, 24:9, 25:7, 26:10, 27:12, 29:4, 30:7
**Dingle's** [2] - 19:13, 25:3
**directed** [3] - 26:11, 26:13, 26:15
**disagree** [2] - 16:10, 25:6
**discharged** [1] - 18:24
**disclose** [1] - 2:25
**discovery** [1] - 18:9
**discussion** [1] - 3:5
**disguises** [1] - 10:1
**dismiss** [1] - 29:3
**dismissed** [1] - 29:17
**disparate** [2] - 25:8, 25:9
**dissent** [1] - 17:20
**DISTRICT** [3] - 1:1, 1:2, 1:11
**District** [4] - 2:2, 31:4
**DIVISION** [1] - 1:3
**DKC-19-0204** [1] - 1:5
**DKC-19-204** [1] - 2:11
**DNA** [1] - 10:8
**docket** [1] - 2:20
**doctrine** [1] - 14:13
**Domino's** [1] - 19:23
**done** [1] - 17:11
**DONTE** [1] - 1:8
**Donte** [1] - 2:10
**double** [2] - 2:20, 2:23
**double-checking** [1] - 2:23
**doubt** [2] - 14:21, 23:22
**down** [10] - 4:14, 14:12, 15:17, 15:18, 15:22, 16:3, 16:11, 20:17, 20:22, 23:9
**Due** [1] - 2:22
**during** [4] - 5:2, 10:20, 18:5, 24:21

### E

**effect** [1] - 2:22
**effective** [1] - 3:9
**Eight** [3] - 18:3, 25:25, 26:3
**eight** [2] - 20:8
**either** [2] - 3:1, 21:9
**electronically** [2] - 4:7, 30:4
**elements** [1] - 25:16
**eliminate** [1] - 5:12
**emotional** [2] - 18:19, 19:5
**employment** [1] - 19:17
**emptied** [1] - 9:4
**end** [3] - 13:23, 14:24, 18:16
**ended** [1] - 13:5
**enforcement** [1] - 19:12
**enter** [3] - 3:21, 26:23, 27:1
**entire** [3] - 8:4, 16:8, 20:10
**entitled** [1] - 27:19
**entry** [1] - 29:6
**ESQUIRE** [2] - 1:14, 1:19
**event** [4] - 5:20, 9:6, 14:11, 25:24
**events** [1] - 8:24
**Everett** [6] - 2:7, 2:12, 3:11, 6:22, 7:5, 29:17
**EVERETT** [14] - 1:14, 2:9, 3:14, 3:17, 4:13, 4:16, 6:15, 6:21, 6:24, 7:4, 7:6, 29:18, 29:23, 30:16
**evidence** [6] - 5:17, 8:21, 10:19, 15:16, 18:18, 18:19
**evolving** [1] - 21:3
**Ewing** [4] - 1:24, 31:3, 31:15, 31:16
**exactly** [2] - 13:5, 21:7, 28:16
**exceptions** [1] - 5:21
**excuse** [1] - 27:21
**executed** [1] - 10:9
**experience** [1] - 18:16
**explain** [1] - 9:11
**expungement** [1] - 21:17

### F

**face** [1] - 22:4
**faces** [1] - 20:23
**facility** [2] - 27:9, 30:10
**facing** [1] - 21:12
**fact** [5] - 11:18, 12:10, 15:11, 19:10, 20:20
**factor** [3] - 14:10, 15:20, 25:2
**factors** [3] - 7:12, 7:18, 10:16
**facts** [2] - 13:17, 23:15
**failed** [1] - 10:25
**fair** [1] - 17:8
**fairly** [2] - 12:24, 16:11
**family** [5] - 14:20, 23:7, 23:10, 23:13, 27:8
**farce** [1] - 17:20
**favorable** [1] - 3:1
**FCI** [2] - 27:6, 27:9
**fear** [4] - 8:25, 9:6, 10:15, 18:15
**February** [1] - 17:7
**federal** [3] - 12:14, 14:2, 15:12
**felon** [7] - 5:18, 5:25, 18:6, 18:8, 21:5, 22:13, 24:18
**felonies** [1] - 13:8
**felt** [1] - 8:25
**fifth** [1] - 25:19
**figure** [1] - 23:5
**file** [1] - 29:8
**filed** [5] - 3:24, 4:2, 4:7, 4:8, 5:15
**final** [2] - 20:5, 29:4
**finally** [1] - 9:15
**financial** [3] - 19:16, 26:14, 26:21
**finger** [2] - 9:2, 19:1
**fingerprint** [1] - 10:8
**firearm** [8] - 6:11, 8:19, 10:11, 18:5, 18:6, 18:10, 24:21, 26:24
**first** [7] - 3:5, 3:8, 4:24, 7:25, 8:15, 16:6, 19:19
**Five** [5] - 11:15, 18:4, 24:20, 26:1, 26:4
**five** [3] - 6:6, 12:24, 26:4
**fix** [1] - 28:5
**Floor** [1] - 1:15
**folks** [1] - 19:20
**follow** [2] - 22:16, 26:2
**followed** [1] - 19:22
**FOR** [3] - 1:2, 1:13, 1:17
**Force** [1] - 17:2

**foregoing** [1] - 31:5
**forfeiting** [1] - 26:23
**forfeiture** [5] - 4:9, 15:23, 15:24, 26:23, 26:25
**forgotten** [1] - 29:22
**fortunately** [1] - 30:8
**four** [13] - 5:16, 6:6, 8:9, 8:18, 10:23, 11:3, 18:7, 19:8, 20:18, 21:16, 21:25, 22:20, 24:3
**Four** [3] - 18:2, 25:25, 26:3
**four-level** [1] - 5:16
**fourth** [1] - 25:19
**Fourth** [2] - 1:15, 29:13
**fractured** [1] - 10:19
**frame** [1] - 21:23
**frankly** [2] - 24:4, 24:10
**fright** [1] - 18:22
**front** [1] - 3:24
**fund** [1] - 26:20

### G

**Gap** [1] - 19:21
**generated** [1] - 25:23
**generic** [1] - 25:15
**given** [3] - 11:18, 25:2, 25:9
**goals** [2] - 12:19, 13:25
**goodness** [2] - 9:22, 10:7
**government** [11] - 2:24, 3:12, 3:25, 4:3, 4:8, 5:1, 6:19, 16:17, 22:25, 24:2, 29:23
**government's** [2] - 4:2, 7:7
**grant** [2] - 27:13, 27:14
**great** [1] - 2:17
**greater** [1] - 12:18
**GREENBELT** [1] - 1:12
**group** [4] - 5:20, 6:1, 6:4, 24:6
**grouped** [1] - 5:18
**grouping** [1] - 11:2
**guess** [1] - 19:3
**guideline** [2] - 6:7, 11:8
**Guidelines** [1] - 15:7
**guidelines** [22] - 5:7, 5:14, 5:23, 6:2, 11:6, 11:7, 11:11, 11:25,

12:4, 15:22, 19:7, 21:7, 21:9, 21:13, 21:22, 22:14, 22:15, 23:1, 24:5, 28:12
**guilt** [1] - 3:1
**guilty** [3] - 11:14, 17:22, 18:13
**gun** [8] - 9:3, 10:10, 18:16, 18:23, 18:25, 20:23, 22:4

### H

**half** [2] - 6:6, 16:19
**hand** [1] - 19:1
**handguns** [1] - 19:21
**Hanlon** [3] - 2:14, 10:22, 17:2
**happy** [1] - 23:12
**hard** [1] - 4:6
**harm** [5] - 9:22, 14:19, 18:18, 18:19, 19:5
**head** [2] - 4:17, 19:25
**heal** [1] - 9:9
**health** [1] - 26:11
**hear** [2] - 8:20, 8:23
**heard** [1] - 17:6
**hearing** [1] - 16:10
**held** [2] - 17:14, 17:16
**help** [3] - 15:11, 23:22, 26:20
**hereby** [1] - 31:5
**hide** [2] - 10:3, 10:5
**higher** [1] - 23:1
**hire** [1] - 29:13
**histories** [1] - 21:6
**history** [7] - 6:10, 7:13, 7:19, 7:20, 12:9, 19:18, 19:19
**hit** [1] - 4:17
**hits** [1] - 14:10
**Hobbs** [4] - 18:2, 18:3, 22:13, 24:18
**Honor** [39] - 2:6, 2:9, 2:13, 2:15, 3:14, 3:17, 3:20, 4:13, 4:20, 4:23, 5:5, 5:11, 6:15, 6:17, 6:21, 6:24, 6:25, 7:4, 7:6, 8:20, 9:25, 12:20, 12:21, 12:23, 14:1, 14:5, 14:14, 15:21, 15:25, 16:6, 17:6, 17:21, 27:5, 27:21, 29:18, 29:23, 29:24, 30:2, 30:16
**HONORABLE** [1] - 1:10
**Honorable** [1] - 2:3
**hope** [2] - 22:6, 30:10

hopefully [1] - 24:25
hopes [1] - 23:4
house [1] - 10:10

## I

identified [1] - 14:9
identify [1] - 10:8
identity [3] - 10:3, 10:5, 22:22
ignore [1] - 17:5
imagination [3] - 14:20, 23:8, 23:14
impact [5] - 4:5, 7:8, 9:8, 18:15, 28:12
impacted [1] - 10:15
important [5] - 5:19, 13:22, 15:20, 23:11, 25:1
impose [6] - 14:5, 15:21, 16:19, 22:21, 23:3, 26:18
imposed [5] - 15:3, 15:6, 19:24, 23:8, 23:21
imposition [2] - 20:5, 22:14
IN [1] - 1:1
inappropriate [1] - 24:11
incarceration [4] - 8:2, 8:3, 8:10, 26:2
incident [1] - 28:9
include [2] - 10:23, 17:23
included [1] - 23:22
including [2] - 16:23, 26:12
increase [1] - 5:16
indicated [3] - 7:6, 11:15, 21:1
indication [1] - 25:20
indicted [1] - 28:4
indictment [4] - 18:1, 26:25, 29:16, 29:17
individual [1] - 15:8
individuals [2] - 15:13, 18:20
inflict [1] - 9:21
information [2] - 2:25, 26:14
initial [1] - 12:3
injuries [2] - 9:20, 9:23
injury [1] - 5:18
insisted [1] - 13:15
instance [1] - 22:18
instances [1] - 21:16
instant [1] - 8:13
instead [2] - 11:10,

23:18
interested [1] - 31:12
invalid [1] - 14:12
investigative [1] - 10:7
involved [1] - 7:22
issues [2] - 4:24, 25:23
iterations [1] - 21:1
itself [1] - 16:11
IV [2] - 6:10, 23:1

## J

job [1] - 18:14
joined [1] - 2:18
JUDGE [1] - 1:11
judgment [3] - 27:1, 29:7, 30:4
July [9] - 13:10, 14:3, 18:8, 18:10, 19:15, 27:17, 27:20, 31:17
JUNE [1] - 1:11
June [7] - 3:24, 4:2, 4:3, 4:6, 4:22, 14:3, 18:8
jury [1] - 25:7
justify [1] - 22:14

## K

kin [1] - 31:12
known [1] - 21:14
knows [5] - 9:11, 18:23, 19:1, 19:16, 29:10

## L

LAMONT [1] - 1:8
LaRai [2] - 1:14, 2:12
large [1] - 23:14
last [5] - 2:21, 3:10, 9:23, 12:11, 20:15
latest [1] - 3:23
law [7] - 2:22, 2:23, 19:12, 20:25, 21:2, 21:19, 26:7
least [1] - 22:5
left [2] - 2:13, 29:21
legal [1] - 25:12
legally [1] - 25:17
lengthy [1] - 7:19
letter [3] - 4:3, 7:8, 10:24
letters [1] - 18:15
level [13] - 5:16, 5:19, 6:10, 8:4, 8:6, 8:15, 11:1, 11:2, 11:6, 11:8, 11:10, 11:19,

12:12
levels [1] - 6:6
lie [1] - 20:15
lied [1] - 17:12
life [6] - 9:18, 11:19, 14:23, 15:5, 18:16, 24:13
life-changing [1] - 18:16
lifetime [1] - 9:23
light [1] - 14:24
likely [1] - 9:23
limited [1] - 23:22
Linsmater [2] - 7:9, 9:17
liquor [4] - 10:21, 18:7, 18:21, 23:19
listed [1] - 26:24
live [1] - 16:13
loaded [1] - 18:25
locate [1] - 10:22
look [1] - 12:23
looked [2] - 10:18, 11:9
looking [6] - 6:2, 7:18, 11:6, 13:17, 19:18, 21:24
looks [2] - 20:3, 20:7
lost [1] - 18:22
love [1] - 23:13
Lowe [2] - 2:19, 4:25
LOWE [3] - 5:5, 5:8, 30:2
lowest [1] - 21:21
luck [2] - 19:12, 19:13

## M

machine [1] - 31:9
man [1] - 14:22
mandatories [1] - 21:21
mandatory [16] - 11:16, 13:24, 14:6, 14:16, 15:3, 15:5, 15:10, 15:17, 15:21, 21:4, 21:13, 21:25, 22:19, 23:9, 25:9, 26:16
morning [5] - 2:5, 2:6, 2:9, 2:15, 12:21
MARYLAND [2] - 1:2, 1:12
Maryland [5] - 1:16, 2:2, 2:25, 3:13, 31:4
mask [1] - 16:3
masks [1] - 7:2
matched [1] - 10:10
material [1] - 3:1
materially [1] - 5:11
materials [1] - 23:16
matter [1] - 31:7

maximum [2] - 6:5, 22:9
mean [8] - 7:3, 14:10, 15:14, 15:15, 15:17, 18:25, 21:18, 25:17
mechanism [1] - 28:22
memo [2] - 4:6, 12:22
memorandum [1] - 4:2
memory [1] - 9:6
memos [1] - 5:15
mental [4] - 9:10, 9:22, 18:19, 26:10
mention [1] - 29:22
mentioned [2] - 8:8, 10:19, 11:1
merit [1] - 23:9
met [1] - 17:7
microphone [1] - 4:14
microphones [1] - 7:3
mid [1] - 20:17
middle [1] - 5:1
might [3] - 3:1, 9:12, 21:12
mind [2] - 9:14, 25:5
minimum [8] - 13:24, 14:6, 15:3, 15:10, 15:21, 22:8, 22:9
minimums [3] - 11:16, 21:4, 22:19
missing [1] - 12:22
mistake [1] - 28:23
moment [1] - 5:25
money [5] - 18:17, 18:21, 19:6, 22:5, 26:19
month [1] - 10:14
months [17] - 8:9, 8:10, 11:8, 11:12, 11:17, 11:23, 12:2, 12:4, 12:5, 15:10, 20:6, 23:3, 23:16, 24:17, 25:24, 26:1
most [3] - 15:4, 15:20, 25:9
mother [2] - 16:23, 23:11
motion [3] - 4:8, 16:10, 26:25
moxie [1] - 23:19
MR [12] - 2:15, 3:20, 4:20, 4:23, 5:11, 6:16, 12:21, 15:24, 17:21, 27:5, 27:8, 29:24
MS [13] - 2:9, 3:14, 3:17, 4:13, 4:16,

6:15, 6:21, 6:24, 7:4, 7:6, 29:18, 29:23, 30:16
multiple [1] - 12:10
must [2] - 22:1, 22:7

## N

natural [1] - 14:23
nature [4] - 7:14, 8:21, 9:24, 13:20
necessarily [1] - 20:21
necessary [4] - 12:18, 14:16, 23:2, 26:8
neck [1] - 10:19
need [6] - 6:18, 17:13, 17:16, 29:17, 30:1, 30:11
needed [1] - 5:23
needs [1] - 12:13
never [1] - 9:12
new [2] - 2:22, 2:23
Nine [5] - 11:15, 18:4, 24:20, 26:1, 26:4
nine [1] - 20:6
NO [1] - 1:5
none [1] - 27:17
NORTHERN [1] - 1:3
noted [6] - 9:8, 9:9, 9:18, 10:17, 11:25, 29:6
NOTES [1] - 1:25
nothing [4] - 5:11, 17:21, 29:24, 30:14
notice [1] - 29:8
notion [1] - 20:15
November [2] - 20:5, 20:11
number [1] - 14:6
numbers [1] - 6:5
NW [1] - 1:19

## O

object [4] - 5:10, 16:8, 17:18
objections [1] - 5:21
objective [1] - 13:17
obligation [3] - 2:24, 3:3, 3:16
obligations [1] - 3:13
observed [1] - 9:1
obvious [1] - 23:8
obviously [10] - 3:6, 5:22, 7:13, 19:16, 21:23, 23:17, 24:22, 24:25, 25:3, 29:2
occasions [1] - 9:2
occurred [2] - 7:25, 18:8

**October** [3] - 2:21, 3:10, 12:11
**OF** [5] - 1:2, 1:5, 1:10, 1:14, 1:25
**offender** [8] - 13:1, 13:3, 14:18, 21:10, 21:13, 25:12, 25:17
**offense** [24] - 5:19, 6:10, 7:15, 7:16, 7:21, 8:1, 8:8, 8:11, 8:13, 8:14, 10:4, 10:12, 11:1, 11:2, 11:6, 11:8, 11:10, 13:14, 18:9, 20:1, 22:23, 23:15, 24:7, 25:16
**offenses** [7] - 7:25, 10:4, 11:2, 11:20, 13:20, 22:12
**OFFICE** [1] - 1:14
**OFFICER** [3] - 5:5, 5:8, 30:2
**officer** [3] - 2:19, 5:15, 26:13
**Official** [1] - 31:3
**OFFICIAL** [1] - 1:23
**official** [1] - 31:17
**often** [1] - 8:5
**old** [5] - 13:10, 13:12, 14:7, 16:15, 16:18
**older** [1] - 20:22
**One** [3] - 18:2, 25:25, 26:3
**one** [22] - 3:25, 4:1, 5:7, 5:17, 6:16, 8:2, 9:14, 12:14, 13:11, 13:12, 13:16, 14:6, 15:13, 17:3, 19:21, 20:15, 20:16, 24:25, 28:1, 28:14
**operators** [1] - 23:20
**opportunity** [6] - 7:7, 7:10, 8:20, 8:23, 9:21, 16:1
**opposed** [1] - 14:23
**opposition** [1] - 4:10
**order** [3] - 3:21, 4:9, 26:23
**ordered** [2] - 9:3, 9:4
**original** [2] - 3:6, 29:16
**otherwise** [1] - 26:21
**outcome** [1] - 31:13
**overall** [3] - 23:6, 24:16, 24:24
**overlook** [1] - 15:11
**owner** [1] - 5:3
**owners** [1] - 23:19

**P**

**package** [1] - 14:13
**pandemic** [1] - 30:9
**Paper** [2] - 4:2, 4:3
**paragraph** [2] - 4:25, 28:14
**parole** [1] - 12:15
**part** [3] - 17:1, 19:13, 23:25
**participate** [3] - 26:10, 26:11, 26:14
**particular** [3] - 7:17, 19:16, 23:10
**parties** [2] - 25:23, 31:8
**party** [1] - 31:12
**past** [1] - 16:13
**patchwork** [1] - 21:3
**patient** [1] - 30:12
**pay** [4] - 27:23, 28:7, 28:21, 29:1
**paying** [1] - 28:25
**pen** [1] - 15:17
**people** [5] - 21:6, 22:6, 23:12, 25:15, 26:20
**people's** [1] - 20:23
**per** [1] - 26:18
**perhaps** [2] - 6:18, 15:20
**period** [3] - 8:3, 8:11, 10:14
**permissible** [1] - 22:18
**permitted** [1] - 25:4
**perspective** [2] - 24:13, 25:4
**persuade** [1] - 20:21
**Peter** [1] - 2:14
**physical** [9] - 5:17, 9:8, 9:20, 9:22, 13:19, 14:18, 18:18, 19:3, 19:4
**pick** [1] - 11:20
**Pizza** [1] - 19:23
**place** [2] - 13:5, 14:22
**placed** [1] - 28:8
**Plaintiff** [1] - 1:6
**PLAINTIFF** [1] - 1:13
**plea** [1] - 17:22
**Plexiglas** [1] - 7:3
**plus** [3] - 10:23, 21:14, 23:11
**point** [1] - 11:3
**pointing** [1] - 9:3
**points** [1] - 18:17
**Police** [1] - 17:1
**police** [2] - 17:15,

18:24
**policy** [1] - 17:22
**possession** [7] - 5:18, 5:25, 18:6, 18:9, 21:6, 22:13, 24:18
**possible** [1] - 27:9
**post** [1] - 20:4
**potential** [3] - 5:16, 13:20, 13:21
**potentially** [2] - 10:6, 21:9
**practical** [1] - 13:9
**practically** [2] - 15:5, 25:18
**preceded** [1] - 3:7
**predicate** [1] - 13:3
**predicates** [1] - 13:8
**preliminary** [1] - 4:9
**prepare** [2] - 27:1, 30:4
**prepared** [1] - 6:9
**present** [1] - 2:16
**presentence** [9] - 3:23, 4:22, 5:10, 12:23, 13:6, 19:24, 20:16, 21:2, 27:15
**presiding** [1] - 2:4
**pretty** [3] - 13:5, 19:10, 28:24
**previously** [1] - 31:7
**prison** [2] - 14:22, 24:17
**Prisons** [3] - 27:4, 27:10, 27:14
**PROBATION** [3] - 5:5, 5:8, 30:2
**probation** [5] - 2:18, 5:15, 8:14, 26:13, 29:25
**problem** [3] - 15:23, 17:10, 17:15
**problems** [1] - 26:21
**proceed** [2] - 6:12, 15:16
**proceeding** [3] - 16:8, 17:23, 30:15
**proceedings** [4] - 3:7, 20:9, 30:18, 31:6
**PROCEEDINGS** [1] - 1:10
**process** [1] - 30:6
**Process** [1] - 2:22
**program** [3] - 26:11, 26:12, 26:15
**prohibits** [1] - 22:22
**promise** [1] - 23:23
**promptly** [1] - 29:9
**propensity** [1] - 20:23
**proper** [1] - 23:18
**properly** [1] - 5:24

**property** [1] - 25:14
**proposal** [1] - 6:9
**proposing** [1] - 5:2
**prosecutor** [1] - 23:25
**prosecutorial** [1] - 23:24
**protect** [2] - 15:1, 25:1
**protection** [1] - 14:10
**Protections** [1] - 2:23
**provide** [4] - 9:7, 10:1, 26:13, 29:13
**provisions** [1] - 6:2
**PSR** [5] - 8:7, 10:18, 11:11, 11:15, 27:22
**public** [3] - 14:10, 15:1, 25:1
**pull** [2] - 4:14, 16:3
**punishment** [2] - 3:2, 14:9
**purposes** [1] - 25:16
**put** [6] - 17:17, 19:14, 20:14, 20:23, 22:4, 23:5
**putting** [1] - 24:10

**Q**

**questioned** [1] - 5:25
**questions** [2] - 13:2, 29:21
**quibble** [1] - 25:12

**R**

**railroaded** [1] - 16:9
**range** [2] - 11:8, 21:21
**rather** [1] - 30:11
**real** [1] - 18:23
**really** [3] - 9:13, 13:23, 27:13
**realm** [1] - 20:25
**reason** [5] - 14:11, 14:13, 26:21, 27:7, 28:22
**reasons** [2] - 10:23, 14:6
**recalculating** [1] - 11:9
**received** [2] - 4:9, 8:2
**receiving** [1] - 18:16
**recognize** [2] - 22:7, 23:10, 24:5
**recognizes** [1] - 22:25
**recommend** [1] - 27:11
**recommendation** [2] - 12:4, 27:6
**recommendations** [1] - 27:3
**recommending** [1] -

12:17
**record** [2] - 25:3, 29:7
**recorded** [1] - 31:9
**recovered** [1] - 10:10
**reduced** [1] - 8:5
**reflect** [1] - 12:9
**reflected** [1] - 28:17
**reflects** [3] - 7:16, 19:24, 27:16
**regarding** [1] - 4:1
**regardless** [1] - 16:20
**registers** [1] - 9:4
**related** [3] - 3:13, 27:16, 28:15
**relation** [2] - 18:5, 24:21
**relationship** [1] - 16:24
**release** [2] - 20:13, 26:2
**released** [6] - 8:7, 8:10, 14:7, 19:22, 20:11, 24:14
**remain** [2] - 4:15, 6:25
**remains** [1] - 19:19
**remind** [2] - 2:24, 3:2
**reminder** [1] - 29:19
**reminds** [1] - 29:15
**removed** [1] - 22:8
**Renee** [4] - 1:24, 31:3, 31:15, 31:16
**reply** [1] - 2:6
**report** [11] - 3:24, 4:22, 5:10, 12:23, 12:24, 13:6, 19:24, 20:16, 21:2, 27:15, 28:17
**reported** [1] - 31:6
**REPORTER** [1] - 1:23
**Reporter** [2] - 31:3, 31:17
**request** [2] - 15:23, 15:24
**requested** [2] - 4:4, 26:14
**requests** [1] - 27:3
**required** [2] - 3:22, 26:6
**requires** [2] - 2:24, 21:5
**resolve** [1] - 29:22
**respectfully** [3] - 16:8, 17:20, 25:6
**responsibility** [2] - 17:11, 25:5
**rest** [2] - 14:23, 24:12
**restitution** [2] - 6:20, 26:16
**result** [2] - 3:3, 6:4
**resulted** [5] - 5:3,

5:19, 18:9, 19:21,
20:4
**reveal** [1] - 10:5
**review** [3] - 7:7, 7:10,
20:4
**reviewed** [2] - 4:21,
5:22
**revision** [2] - 3:24,
4:22
**revisions** [1] - 12:24
**Ridgeway** [1] - 5:3
**rivals** [1] - 15:3
**RMR** [2] - 1:24, 31:16
**road** [1] - 14:12
**robberies** [11] - 8:18,
8:24, 12:10, 13:7,
15:14, 18:3, 18:7,
20:18, 22:13, 24:6
**robbery** [13] - 5:2,
5:17, 7:22, 7:23, 8:8,
8:12, 15:9, 18:2,
19:19, 19:20, 19:22,
25:19, 25:20
**RPR** [2] - 1:24, 31:16
**run** [1] - 26:5

## S

**safely** [1] - 24:12
**Sarah** [1] - 7:9
**satisfactory** [1] -
13:25
**satisfied** [1] - 6:2
**satisfy** [2] - 12:18,
14:8
**saw** [2] - 23:14, 25:10
**scared** [1] - 9:1
**scars** [1] - 9:10
**scratch** [1] - 19:25
**seal** [1] - 4:4
**search** [2] - 10:9, 18:9
**seated** [2] - 4:15, 6:25
**second** [4] - 3:24,
4:21, 8:8, 8:16
**see** [9] - 2:17, 2:20,
16:16, 16:25, 23:12,
24:4, 24:9, 27:22
**seeing** [1] - 14:23
**seeking** [1] - 6:20
**sense** [1] - 13:4
**sentence** [37] - 5:1,
5:4, 5:13, 7:16, 8:6,
8:17, 10:17, 11:5,
11:23, 12:7, 12:13,
12:16, 12:17, 14:8,
14:14, 14:15, 15:2,
15:3, 15:5, 15:6,
15:8, 15:9, 16:20,
19:22, 19:24, 22:2,
22:23, 23:6, 23:13,

24:11, 24:16, 24:25,
27:18, 28:13, 28:19
**sentences** [6] - 8:5,
21:16, 23:8, 23:21,
24:19, 25:24
**SENTENCING** [1] -
1:10
**Sentencing** [1] - 15:7
**sentencing** [14] - 2:13,
3:23, 4:1, 4:12, 5:15,
7:8, 7:12, 10:24,
14:13, 17:23, 18:1,
20:2, 20:25, 21:7
**separate** [5] - 8:18,
24:5, 24:7, 28:9
**September** [1] - 17:9
**serious** [4] - 3:3, 8:22,
9:7, 10:12
**seriousness** [2] -
7:16, 18:12
**serve** [3] - 8:4, 12:15,
16:21
**served** [2] - 8:17, 20:6
**services** [1] - 26:15
**session** [1] - 2:3
**Seven** [5] - 11:15,
18:4, 24:20, 26:1,
26:4
**seven** [8] - 11:16,
15:18, 21:15, 21:25,
22:5, 22:9, 24:19,
25:25
**seven-year** [2] -
21:15, 24:19
**several** [2] - 10:14,
21:1
**several-month** [1] -
10:14
**shall** [1] - 19:14
**shame** [1] - 23:16
**sheet** [1] - 15:7
**shorthand** [1] - 31:9
**shot** [1] - 17:8
**shown** [2] - 20:19,
26:17
**shy** [1] - 8:10
**significant** [12] - 7:19,
7:20, 7:24, 8:6, 8:10,
8:12, 8:17, 9:20,
9:25, 11:23, 12:13,
24:25
**silly** [1] - 14:22
**similar** [2] - 10:4,
11:19, 21:7
**similarly** [1] - 27:9
**similarly-situated** [1] -
27:9
**simply** [2] - 20:22,
25:14
**situated** [1] - 27:9

situation [3] - 13:18,
17:17, 18:25
**six** [3] - 12:24, 16:17,
22:12
**Six** [3] - 18:2, 25:25,
26:3
**sixth** [1] - 25:19
**slightly** [1] - 7:11
**sloppiness** [1] - 19:13
**slow** [2] - 20:17, 20:22
**smarts** [1] - 23:18
**society** [1] - 22:8
**sold** [1] - 10:20
**someone** [2] - 18:17,
21:10
**sometimes** [1] - 21:19
**soon** [3] - 18:24, 27:1,
30:4
**sooner** [1] - 30:10
**sorry** [1] - 25:6
**sought** [2] - 26:16,
26:17
**spaced** [1] - 19:8
**special** [2] - 16:24,
26:18
**spree** [2] - 20:11,
25:10
**sprees** [1] - 23:23
**standard** [1] - 26:7
**standing** [2] - 7:2,
16:14
**standpoint** [2] - 13:9,
13:18
**start** [3] - 6:22, 13:23,
18:11
**started** [3] - 13:1, 13:5
**starting** [1] - 22:2
**state** [5] - 8:4, 8:5,
14:1, 15:12, 27:16
**statement** [2] - 7:9,
9:8
**statements** [2] - 4:5,
31:8
**STATES** [4] - 1:1, 1:5,
1:11, 1:14
**States** [6] - 2:2, 2:10,
2:12, 7:12, 15:15,
31:4
**statistics** [1] - 23:21
**statute** [4] - 3:7, 3:9,
21:5, 22:22
**statutes** [1] - 21:4
**statutory** [2] - 15:2,
15:21
**stay** [1] - 7:3
**stenographically** [1] -
31:6
**STENOTYPE** [1] -
1:25
**still** [9] - 6:4, 8:6, 8:14,

14:13, 15:3, 21:23,
23:2, 24:9, 24:10
**stopped** [3] - 19:11,
24:2, 25:21
**store** [5] - 5:3, 10:21,
18:7, 19:21, 23:19
**stores** [1] - 18:21
**strange** [1] - 14:11
**Street** [1] - 1:15
**stress** [1] - 18:19
**stroke** [1] - 15:17
**strong** [1] - 13:21
**struggled** [1] - 9:18
**struggling** [1] - 24:10
**subject** [1] - 18:7
**submissions** [1] -
3:25
**submitted** [2] - 10:24,
23:16
**substance** [1] - 26:12
**substantive** [3] - 18:3,
22:13, 24:18
**sufficient** [1] - 12:18
**suggests** [3] - 12:5,
12:12, 23:7
**Suite** [1] - 1:20
**summer** [3] - 8:24,
20:12, 23:20
**superseding** [1] -
29:16
**supervised** [1] - 26:2
**supervision** [3] - 26:7,
26:8, 31:10
**support** [2] - 10:19,
23:13
**supporting** [1] - 5:2
**suppose** [1] - 19:19
**supposed** [1] - 3:5
**surrounding** [1] -
11:21
**survive** [1] - 16:19
**suspended** [1] - 20:7
**system** [3] - 12:14,
14:2, 24:1

## T

**talent** [1] - 23:17
**Task** [1] - 17:2
**tattoo** [1] - 10:5
**ten** [6] - 8:2, 8:3,
11:14, 16:17, 18:1,
19:21
**Ten** [3] - 18:6, 25:25,
26:4
**ten-year** [2] - 8:3,
19:21
**terms** [3] - 18:11,
21:19, 23:14
**terrorize** [1] - 23:19

**terrorized** [1] - 10:13
**terrorizing** [1] - 11:21
**testified** [3] - 8:23,
8:25, 10:15
**testify** [1] - 10:1
**testimony** [2] - 10:20,
31:8
**testing** [1] - 26:12
**TFO** [2] - 2:13, 10:22
**THE** [46] - 1:1, 1:2,
1:10, 1:13, 1:14,
1:17, 2:1, 2:5, 2:7,
2:17, 3:15, 3:18,
3:21, 4:14, 4:18,
4:21, 4:24, 5:6, 5:9,
5:12, 6:18, 6:22, 7:1,
7:5, 15:23, 16:1,
16:3, 16:4, 16:6,
17:25, 27:7, 27:11,
27:21, 27:23, 27:24,
28:1, 28:3, 28:6,
28:8, 28:10, 28:25,
29:2, 29:20, 29:25,
30:3, 30:17
**theft** [1] - 22:22
**thereafter** [1] - 31:10
**therefore** [1] - 27:19
**thereof** [1] - 31:13
**thinks** [1] - 9:14
**third** [2] - 25:18, 25:19
**threat** [2] - 25:14
**Three** [5] - 11:15,
18:3, 24:20, 26:1,
26:4
**three** [4] - 6:6, 8:9,
11:12, 26:3
**three-and-a-half** [1] -
6:6
**throughout** [1] -
11:19, 20:9
**ties** [2] - 14:20, 23:8
**today** [5] - 2:13, 6:13,
7:22, 12:16, 29:7
**together** [7] - 2:21,
3:6, 19:14, 23:5,
23:23, 24:10, 24:23
**tomorrow** [1] - 29:8
**top** [1] - 21:13
**total** [3] - 11:16, 26:1,
26:19
**touch** [1] - 7:10
**touched** [1] - 25:22
**track** [1] - 25:3
**transcribed** [1] - 31:10
**TRANSCRIPT** [1] -
1:10
**transcript** [1] - 31:6
**TRANSCRIPTION** [1] -
1:25
**transcription** [1] -

31:11

**transferred** [1] - 14:2

**transportation** [1] - 30:9

**trauma** [1] - 18:22

**treat** [1] - 24:6

**treated** [1] - 16:11

**treatment** [3] - 21:5, 26:11, 26:12

**trial** [5] - 13:15, 16:11, 18:8, 18:14, 21:11

**trials** [1] - 20:3

**trigger** [2] - 9:2, 19:1

**true** [2] - 18:17, 31:5

**trying** [2] - 25:22, 28:5

**tunnel** [1] - 14:24

**turn** [1] - 6:23

**turning** [1] - 8:1

**Two** [3] - 18:2, 25:25, 26:3

**two** [9] - 3:25, 7:21, 7:24, 10:3, 15:13, 19:8, 20:3, 20:6, 29:6

**type** [5] - 8:11, 9:11, 11:20, 12:9, 16:19

**types** [1] - 3:4

## U

**ultimate** [1] - 6:7

**ultimately** [1] - 11:3

**unable** [1] - 29:12

**unclear** [1] - 29:21

**under** [8] - 2:25, 3:13, 7:12, 12:19, 13:8, 23:2, 24:23, 31:10

**underlying** [1] - 22:23

**understandably** [1] - 23:4

**undertook** [1] - 19:15

**unfortunately** [2] - 10:22, 23:12

**UNITED** [4] - 1:1, 1:5, 1:11, 1:14

**United** [6] - 2:2, 2:10, 2:12, 7:12, 15:15, 31:4

**units** [1] - 6:5

**unlike** [1] - 22:21

**up** [4] - 11:20, 13:5, 27:12, 27:13

## V

**variance** [2] - 14:5, 23:9

**variety** [1] - 3:3

**vary** [1] - 15:22

**victim** [9] - 4:5, 7:8,

7:9, 9:7, 9:17, 10:20, 24:5, 24:7

**victims** [7] - 6:19, 8:23, 9:23, 10:14, 18:13, 18:22, 26:20

**violations** [1] - 3:2

**violence** [7] - 13:19, 18:5, 21:8, 21:10, 24:21, 25:13

**violent** [2] - 13:8, 15:4

**vocational** [1] - 26:15

**vs** [3] - 2:10, 2:25, 3:13

## W

**walk** [1] - 22:4

**wants** [1] - 12:3

**warrant** [1] - 10:9

**Washington** [1] - 1:20

**ways** [1] - 13:13

**weapon** [3] - 7:23, 15:25, 19:20

**WEDNESDAY** [1] - 1:11

**week** [2] - 16:18, 19:9

**weeks** [3] - 19:9, 29:6, 30:12

**white** [1] - 17:13

**whole** [1] - 16:8

**witnesses** [2] - 10:1, 31:8

**wonderful** [1] - 18:14

**wore** [1] - 10:2

**works** [1] - 24:1

**world** [1] - 16:14

**worn** [1] - 10:4

**wounds** [1] - 9:9

**writ** [1] - 23:14

**writing** [4] - 4:11, 4:19, 27:1, 29:6

## Y

**year** [6] - 8:3, 12:11, 13:13, 19:21, 21:15, 24:19

**years** [25] - 8:2, 9:15, 11:13, 11:16, 13:10, 13:12, 13:24, 14:7, 15:5, 15:18, 16:15, 16:18, 20:5, 20:6, 20:8, 21:25, 22:2, 22:5, 22:9, 24:17, 24:24, 26:3, 26:4

**yourself** [1] - 16:2